## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH A. PIERPONT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN NORTH AMERICA, INC., and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded<br><br>Date:  November 6, 2015 |

Plaintiff Joseph A. Pierpont, ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated, and alleges as follows:

### INTRODUCTION

1.      Defendant Experian North America, Inc. and Experian Information Solutions, Inc. (collectively "Experian" or "Defendant") is the largest of the four major credit reporting agencies[1] in the United States.

2.      As part of its business Experian provides credit checking and processing services for United States businesses.  Among its customers is T-Mobile USA, Inc. ("T-Mobile"), which contracted with Experian to run credit checks on its customers applying for wireless and data services.  As part of this contract T-Mobile sent its applicants' personal identification information to Experian for processing.  In turn, Experian collected and stored that information.

3.      On October 1, 2015, it was announced that a major data breach had occurred at Experian.  The breach lasted for an astonishing two years, from September 1, 2013 to September

---

[1]      Equifax, TransUnion, and Innovis are the other three.

16, 2015, and exposed the sensitive, personal identification information of approximately 15 million T-Mobile applicants.

4.    This data breach was far from the first to hit Experian.  In fact, Experian has suffered an untold number of data breaches in the past, with some privacy advocates claiming the number to be in the hundreds.

5.    Despite Experian's troubling past, it disregarded data security.  Instead of viewing security procedures and protocols as an asset, Experian viewed them as a hassle and attempted to cut costs wherever possible.

6.    This is disturbing in itself, but also particularly unnerving given the fact that Experian touts itself as a security and data breach expert.  Experian's lax security procedures and history of data breaches is in stark contrast to Experian's bold pronouncements.  For years, Experian has failed to implement adequate data security measures and its failure caused this data breach.  Experian had a duty to protect the private, highly-sensitive, confidential PII (defined below at ¶19) of Plaintiff and members of the proposed classes.

7.    Experian failed to safeguard and prevent vulnerabilities from being taken advantage of in their computer and information technology systems.  Plaintiff and the proposed Class members have a possessory interest in their PII and an interest in it remaining private because that information, including incredibly private and sensitive information such as Social Security numbers, has substantial value not only to Plaintiff and the proposed Class members, but also to criminals who traffic in such information, using it to steal the identities of victims like Plaintiff and the Class.

8.    Because of the real threat of immediate harm, as well as the intrinsic value of the stolen information itself, Plaintiff and the proposed Class members have suffered an immediate

and present injury to their privacy and possessory interest as a direct result of Defendants' negligent failure to safeguard Plaintiff's PII and continue to suffer a substantial risk of imminent fraud, identity theft and abuse.

9.     Accordingly, Plaintiff, individually and on behalf of the members of the proposed classes (defined below), asserts claims for willful and negligent violations of the fair credit reporting act ("FCRA"), negligence, negligence *per se*, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), and seeks injunctive relief, declaratory relief, monetary damages, statutory damages, and all other relief authorized in equity or by law.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681, *et seq*.

11.     This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from Defendant.

12.     Venue in this judicial district is proper under 28 U.S.C. §1391 because Experian regularly transacts business in this district and the transactions and occurrences underlying Plaintiff's claims originated in this district.

## PARTIES

13.     Plaintiff Joseph A. Pierpont is a resident of Branford, Connecticut.  On October 5, 2015, Plaintiff Pierpont received a letter from Experian stating that his PII had been compromised as a result of the Data Breach.

3

14.     Defendant Experian North America, Inc. is a Delaware Corporation with its principal place of business in Schaumburg, Illinois.  According to Brian Krebs, a well-respected cyber security blogger, "Experian North America" is implicated in the Data Breach.  *See* Brian Krebs, *Experian Breach Affects 15 Million Consumers*, KREBSONSECURITY (Oct. 2, 2015), http://krebsonsecurity.com/2015/10/experian-breach-affects-15-million-consumers/ (last visited Nov. 6, 2015); *see also Experian Notifies Consumers In The U.S. Who May Have Been Affected By Unauthorized Acquisition Of A Client's Data*, PRNEWSWIRE (Oct. 1, 2015), http://www.prnewswire.com/news-releases/experian-notifies-consumers-in-the-us-who-may-have-been-affected-by-unauthorized-acquisition-of-a-clients-data-300152926.html (last visited Nov. 6, 2015) ("***Experian North America*** today announced that one of its business units, notably not its consumer credit bureau, experienced an unauthorized acquisition of information from a server that contained data on behalf of one of its clients, T-Mobile, USA, Inc.") (emphasis added).

15.     Defendant Experian Information Solutions, Inc. is an Ohio Corporation with its principal place of business in Costa Mesa, California. Defendant also lists Schaumburg, Illinois as its principal place of business on its "Corporate Contacts" webpage. *See Corporate Contacts*, EXPERIAN, http://www.experian.com/corporate/corporate-contacts.html (last visited Nov. 6, 2015).

16.     Experian is the United States based arm of the global credit reporting agency Experian PLC.  Experian provides credit reporting services in the United States and maintains a database which contains the information of over 220 million United States consumers.

17.     Experian provides credit checking and processing services to many businesses throughout the United States.  T-Mobile, a national provider of wireless and data services

4

capable of reaching over 293 million Americans, uses Experian to run credit checks and processing on its customers applying for wireless and data services.  As part of this relationship, T-Mobile requires applicants to provide personal identification information and delivers this information to Experian.  After T-Mobile provides Experian with its applicants' information, Experian compiles and stores the data and thereafter provides T-Mobile with a credit report, which T-Mobile then uses to determine the credit worthiness of a particular customer.

## FACTUAL BACKGROUND

**A.      The Data Breach Has Caused Harm.**

18.      Over the course of two years, from approximately September 1, 2013 to September 16, 2015, hackers stole the personal identification information of approximately 15 million T-Mobile applicants, including Plaintiff and the members of the proposed classes, from Experian's computer databases (the "Data Breach").

19.      The stolen information includes, but is not limited to, names, dates of birth, addresses, Social Security numbers, drivers' license numbers, and additional information used in T-Mobile's credit assessment (collectively "PII").

20.      The hackers specifically targeted Experian's database in an attempt to steal consumer PII.

21.      Once the hackers breached Experian's computer systems, they read and recognized Plaintiff's and the Class members' PII, and thereafter exfiltrated the information from Experian's network.

22.      Hackers already have misused the stolen information by putting it up for sale on internet black markets.  In fact, Trustev, an Irish fraud prevention startup, which monitors the

illicit sale of stolen PII, recently stated that Fullz[2] listings on the dark web are "extremely likely" to be the same data stolen in the course of the Data Breach.

23.     As a result of the Data Breach, T-Mobile applicants and customers, including Plaintiff and the Class members, have suffered harm, including, but not limited to, theft of their valuable PII, costs and time associated with sorting out and protecting their personal and financial affairs, and/or costs and time associated with identity theft, fraud, and abuse.

24.     Plaintiff and the members of the proposed classes continue to suffer harm in that they now are under a substantial risk of imminent harm because unknown third parties have access to their PII, have already misused that information by putting it up for sale, and likely will misuse it again.

25.     The PII stolen in the Data Breach, and now for sale online, is particularly damaging to Plaintiff and the members of the proposed classes because it allows cyber criminals and identity thieves to, among other things, set up new lines of credit, open new financial accounts, file fraudulent tax returns, obtain government issued identification and benefits, pay for healthcare services, and conduct other transactions under the names of Plaintiff and the other individuals whose PII was accessed and stolen.  The accessed and stolen PII also can be used to obtain payment card and bank account data from Plaintiff's and the Class members' financial institutions, and thereafter incur fraudulent charges and abuse on said accounts.

26.     As recognized by the Government Accountability Office (the "GAO"), the sort of identity theft, fraud, and abuse identified in the above paragraph can take some time to mature and may occur long after a data breach.  Indeed, the GAO stated, "stolen data may be held for up

---

[2]     "Fullz" is a slang term used by hackers and data brokers to refer to a full package of an individual's PII.  These data sets generally include name, Social Security number, birth date, and other data.

to a year or more before being used to commit identity theft.  Further, once stolen data has been

sold or posted on the Web, fraudulent use of that information may continue for years." U.S.

Gov't Accountability Office, GAO–07–737, Report to Congressional Requesters: Personal

Information 29 (2007).

   27. Unlike credit card and bank account data, Plaintiff and the members of the

proposed classes cannot simply cancel their names, birthdates, and other PII accessed and stolen

during the Data Breach.  Although it is possible to change Social Security numbers, under

current laws, individuals can only obtain a new Social Security number ***after*** they have become

victims of identity theft.  Even then, obtaining a new Social Security number does not guarantee

a fresh start – names, birthdates, and other personal identification information remains the same.

Additionally, the old social security numbers likely will remain on file with other governmental

agencies (such as the IRS) and private businesses (such as banks and other credit reporting

agencies).  Moreover, additional problems are associated with obtaining a new Social Security

number.  For example, there is no credit history associated with the new Social Security number.

As a result, it is difficult to obtain new lines of credit until the individual builds up sufficient

credit history, which may take months, if not years to rebuild.

   28. Instead of offering consumers something of value for the harm it has caused,

Experian has taken this opportunity to promote its own products by offering affected applicants

and consumers two years free credit monitoring ***through its own credit protection service.***  Not

only is this an inexcusable marketing ploy, it also is largely useless.  First, Experian is the entity

which caused the Breach, and as detailed below, has been breached numerous times in the past.

Entrusting the organization that caused the Breach to provide protection for future breaches is

absurd.  Second, Experian's services only are capable of informing consumers about identity

theft *after* it has occurred.  As a result, the only benefit possibly provided is helping an affected party through the process of getting credit bureaus and/or creditors to remove fraudulent activity from a party's credit file and fix a party's credit score.

29.     Seemingly recognizing the inadequacy of its credit monitoring services, Experian has offered to freeze the credit file of affected individuals without charge.  However, this too is insufficient because a credit freeze is only effective if an individual's credit file is frozen at the four major credit bureaus.  The cost to freeze credit records varies by state, but generally is around $10 to initiate the freeze and another $10 to lift the freeze, even temporarily.  In addition to these costs, it takes time to lift a freeze, which time can take up to three days.  Obviously, these costs are borne by the individual.

30.     As a result, Experian's offers are inadequate and unable to fully recompense Plaintiff and the Class members for the injury caused by Defendant's conduct.

**B.     Experian Knew Its Computer Systems Were Vulnerable.**

31.     Experian has experienced numerous data breaches in the past.

32.     For example, in 2010, hackers stole credentials from the El Paso Police Department in Texas and requested credit reports for almost 800 customers, all residing in North Carolina, New Jersey, Maine, New Hampshire and Maryland.  Despite the odd fact that a Texas police department was requesting the credit reports of individuals residing in states so far away, Experian failed to catch this anomaly and reject the requests.

33.     In 2011, hackers gained access to the computer of a federal credit union and used an employees' credentials for the credit union's account to access Experian's databases and steal the PII of over 800 individuals.  Despite the fact that these individuals had never done business with the credit union, that the credit union had never requested such a large amount of records in

such a short amount of time, and that the IP address requesting the records was not associated with the credit union, Experian's computer systems failed to catch the anomaly and reject the out-of-character requests.

34.    In 2012, Experian purchased Court Ventures, Inc., a company that collected and sold public record data from more than 1,400 state and county sources.

35.    One of Court Ventures' customers was a 22-year old Vietnamese man running an online identity theft service.  The man, posing as a private investigator based in the United States, gained access to over 200 million customer records and paid for these records via wire transfers from a bank in Singapore.

36.    Once Experian purchased Court Ventures, the 22-year old man continued siphoning consumer data from Court Ventures and other connected databases for almost ten months.  Experian only caught the man when federal investigators notified Experian of the illegal activity.  This is inexplicable given the fact that the identity thief posed as a United States personal investigator, but paid for his data searches from a bank in Singapore.

37.    According to the Justice Department, this breach caused the filing of $65 million in fraudulent individual income tax returns.

38.    In 2013, Decisioning Solutions, a then recently acquired subsidiary of Experian, experienced a data breach, which exposed the PII of T-Mobile customers, including social security and driver's license numbers.  Similar to the Data Breach detailed here, Experian offered for free its own credit monitoring services to affected individuals.

39.    This short survey of breaches is not even the tip of the iceberg.  According to Dissent Doe, a privacy advocate, Freedom of Information Act requests have revealed that Experian has been breached more than 100 times.  Fight for the Future, an internet freedom and

privacy group, has made similar claims.

40.     As a result, Experian was well aware of the fact that its systems were woefully deficient and totally incapable of protecting the information of Plaintiff and the other individuals whose PII was accessed and stolen in the Data Breach.  Moreover, the large number of prior breaches undeniably shows that Experian knew it was a constant target for identity thieves and cyber criminals and that the PII of Plaintiff and the members of the proposed classes was at great risk of theft and unauthorized access.

**C.     Experian Expended Resources Lobbying for Immunity Instead of Fixing the Known Vulnerabilities in Its Computer Systems.**

41.     Despite Experian's long and extensive history of being a prime target for cyber security criminals and the success cyber criminals historically had at breaching Experian's computer systems and stealing the consumer PII Experian stored, Experian choose to lobby for immunity instead of fixing its deficient security systems and protecting consumer PII.

42.     Experian has been an ardent supporter of the Cybersecurity Information Sharing Act ("CISA").  If passed, this bill provides Experian and other businesses immunity from their negligence and data security misconduct, so long as they share information about the breach with the government.  Since July 2014, the date CISA was introduced, Experian has spent over $1 million in lobbying fees.

43.     Experian's efforts directed at lobbying are in stark contrast to its efforts directed at data security.

44.     Since the 2013 departure of John Finch, Experian's former Chief Information Officer, data security has become an afterthought at Experian.  For example, when Finch left, he had built a team of approximately 30 experienced and talented security members, but since his departure, Experian's security staff has decreased to about a dozen.  Additionally, under Finch's

leadership, data security was looked at as an asset and significant investment was made in tools, architecture, and collaboration among business groups.  Since Finch's departure, however, the data security focus has changed to controlling costs.  Now, data systems are kept running at the expense of valuable security maintenance, and the previous investments in tools and architecture are disappearing and have failed to be implemented.  Indeed, the dwindling of Experian's security staff, at least in part, is attributable to the lack of support and buy-in for security programs and improvements.

45.    Experian's disinterest, and apparent hostility towards data security, is not only problematic in itself, but also troubling given Experian's aggressive acquisition strategy. Without any robust security measures to test and integrate the data security of the entities Experian acquires, Experian has left open innumerable holes for thieves to exploit the databases of Experian, its subsidiaries and its customers.  Indeed, as evidenced in Section B above, Experian has suffered numerous data breaches involving its acquisitions in the past due to its inadequate data security practices.

**D.    By Failing to Implement Adequate and Reasonable Data Security Protocols and Practices, Experian Failed to Live Up to Its Own Data Security Mandates.**

46.    Experian has touted itself as a data security expert and has made a commitment to consumers and the public to protect their personal identification data.

47.    For example, Experian's privacy policy prominently states:

Experian® considers itself a steward of the information it collects, maintains and utilizes.  Our responsibility is to ensure the security of the information in our care and to maintain the privacy of consumers through appropriate, responsible use.

*Privacy Policy*, EXPERIAN, http://www.experian.com/privacy/index.html (last visited Nov.  4, 2015).

48.     Experian also has stated that it has enormous responsibility to keep safe and secure the personal information it possesses and stores:

> Experian North America manages more than 220 million consumer credit files which brings with it an enormous responsibility.  It is our commitment to protect and manage those files, and ensure their integrity so that consumers are afforded the many opportunities associated with credit.  We have invested in businesses and processes that enable Experian to have the highest-quality, freshest data for consumers.
>
> \* \* \*
>
> You have our commitment to continue researching and investing in ways to maintain and build on the integrity of the data we manage, and the ways we support consumers throughout their life of using credit.

*Our Commitment, Data Integrity*, EXPERIAN,  http://www.experian.com/ourcommitment/data-integrity.html (last visited Nov.  4, 2015).

49.     Similarly, Experian has recognized that as a credit bureau, it has a duty to implement adequate and reasonable data security measures to protect the information it collects and stores:

> Credit bureau systems are expected to collect and manage highly sensitive data; specific security measures need to be in place to avoid unauthorized access to the bureau databases as well as ensuring that credit information is used in full compliancy with the bureau conduct code and the local data protection legislations.  Experian bureau systems host a large number of security mechanisms to control and validate access rights.  Sophisticated hardware and software solutions are deployed to enable the Bureau Operator to clearly fulfill international and local security requirements.

What is a Credit Bureau?, EXPERIAN,  http://www.experian.com/global-credit-bureau/what-is-a-credit-bureau.html (last visited Nov.  4, 2015).

50.     In the face of Experian's bold pronouncements concerning its commitment and duties regarding data security and the confidentiality of the personal identification information it holds, Experian failed to honor its word and discharge its duty.  Instead, Experian disregarded data security, and, as a direct and proximate result, caused harm, as detailed above, to Plaintiff

and the Class members.

## CLASS ALLEGATIONS

51.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).  The classes Plaintiff seeks to represent are defined as follows:

**The Nationwide Class**

All persons in the United States whose PII was stored, contained, or found on Experian's computer systems, and whose PII was accessed and stolen or otherwise misappropriated as a result of the Data Breach.

**The Statewide Connecticut Class**

All persons in Connecticut whose PII was stored, contained, or found on Experian's computer systems, and whose PII was accessed and stolen or otherwise misappropriated as a result of the Data Breach.

52.     Excluded from the classes are Defendant and its parents or subsidiaries, any entity in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns.  Also excluded are any Judges to whom this case is assigned as well as his or her judicial staff and immediate family members.

53.     <u>Numerosity:</u> The classes described above are so numerous that joinder of all individual members in one action would be impracticable.   The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

54.     <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the members of the classes.   Specifically, Plaintiff and the Class members' claims arise from Defendant's failure to provide adequate and reasonable data security and failure to protect the PII of Plaintiff and the classes.

55. <u>Commonality and Predominance:</u>  There are common questions of law and fact to all members of the classes, the answers to which will advance the resolution of the claims of the Class members.   These questions predominate over any individual questions.   The common questions include, but are not limited to:

a) Whether Defendant failed to provide adequate security and/or protection for its computer systems containing Plaintiff's and the Class members' PII;

b) Whether Defendant owed a legal duty to Plaintiff and the Class members to protect their PII and whether Defendant breached this duty;

c) Whether Defendant's conduct as alleged herein resulted in the Data Breach and the resulting access and theft of Plaintiff's and the Class members' PII;

d) Whether Plaintiff and the Class have been injured by Defendant's conduct;

e) Whether Plaintiff and the Class members are at imminent risk of identity theft, fraud and abuse as a result of Defendant's conduct;

f) Whether Defendant willfully, recklessly or negligently violated the FCRA by failing to adequately protect the PII of Plaintiff and the Class;

g) Whether Defendant's conduct is unfair; and

h) Whether Defendant violated the FCRA by failing to implement adequate security protocols and practices.

56. <u>Adequacy:</u>  Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of either class.   Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class members and has no interests antagonistic to the Class members.   Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

57.    <u>Superiority:</u> A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.   The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendant.   Even if it were economically feasible, requiring millions of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments.   By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

58.    Class certification is also appropriate under Fed.  R.  Civ.  P.  23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the proposed classes, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the classes as a whole.

59.    The members of the proposed classes are individuals whose information was taken by T-Mobile, and transferred to Experian.   As such, the members of each class are readily ascertainable, as they can be identified by records maintained by Defendant.   Notice can be provided by means permissible under Rule 23.

## CAUSES OF ACTION

**COUNT I:    WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681, *et seq.***
**(on behalf of the Nationwide Class)**

60.    Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.   Plaintiff brings this claim on behalf of the Nationwide Class.

61.    Plaintiff and the members of the Class are "consumers" within the meaning of the FCRA.   *See* 15 U.S.C. §1681a(c).

62.     Experian is a "consumer reporting agency" within the meaning of the FCRA. *See id.* at §1681a(f).

63.     The information disclosed in the breach constitutes as a "consumer report" under the FCRA. *See id* at §1681a(d)(1).

64.     As a consumer reporting agency, Experian was, and is, required by the FCRA to put in place and maintain procedures that would protect the PII of Plaintiff and the members of the Class and limit its disclosure to those entities and persons outlined in the applicable FCRA sections and regulations. *See id.* at §§1681e(a), 1681b.

65.     Experian willfully or recklessly failed to put in place and/or maintain the requisite procedures, thereby directly causing the disclosure of the PII of Plaintiff and the Class members to unauthorized third-parties.

66.     Experian's violation was willful or reckless because Experian was aware of its obligations to protect the PII at issue and knew or acted with reckless disregard of whether its conduct would result in the wrongful dissemination of that information.

67.     As a direct and proximate result of Experian's willful violation, Plaintiff and the members of the Class have suffered and continue to suffer injury.   Accordingly, Plaintiff and the Class are entitled to statutory damages, non-statutory damages in an amount to be proven at trial, and attorneys' fees.

**COUNT II:   NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681, *et seq.***
**(on behalf of the Nationwide Class)**

68.     Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.  Plaintiff brings this claim on behalf of the Nationwide Class.

69.     In the alternative to his claim for a willful violation of the FCRA, Plaintiff and the Class allege that Experian negligently violated the FCRA by failing to adequately protect the PII of Plaintiff and the Class members, to put in place and maintain procedures designed to protect the PII of Plaintiff and the Class members, and to limit the disclosure of such information solely to the permissible situations outlined by the FCRA.

70.     As described above, this failure proximately caused the theft and wrongful dissemination of the PII of Plaintiff and the Class.

71.     It was reasonably foreseeable that Experian's failure to put in place and maintain procedures to protect and limit the disclosure of the PII of Plaintiff and the Class would result in the unauthorized access and theft of such information.

72.     As a direct and proximate result of Experian's negligent violation, Plaintiff and the members of the Class have suffered, and continue to suffer, injury.   Accordingly, Plaintiff and the Class are entitled to statutory damages, non-statutory damages in an amount to be proven at trial, and attorneys' fees.

### COUNT III:  NEGLIGENCE
### (on behalf of the Statewide Connecticut Class)

73.     Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.  Plaintiff brings this claim on behalf of the Statewide Connecticut Class.

74.     Experian had a duty to exercise reasonable care to protect and secure Plaintiff's and the Class members' PII within its possession and/or control from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty arises from multiple sources, including, but not limited to, those identified below.

75.     Plaintiff and the Class members, as T-Mobile applicants and customers, constitute a well-defined, finite, and foreseeable class, whose suffered harms were known and particularly foreseeable to Experian.

76.     Experian knew that by taking, collecting, and storing the PII of Plaintiff and the Class, it would become a target for cyber criminals and that cyber criminals would attempt to access and steal this information.  Experian also knew that it was a particularly promising target for cyber criminals because of the vast consumer and business records in its possession and/or control.  As a result, Experian had a duty to protect the PII of Plaintiff and the Class from the foreseeable risk of harm attendant to the authorized access and theft of their PII.

77.     Experian also had a duty to protect the PII of Plaintiff and the Class because Experian had a duty to use reasonable data security measures pursuant to Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §45, which prohibits "unfair . . . practices in or affecting commerce," including as interpreted and enforced by the FTC, the unfair practice of failing to implement and maintain reasonable measures to protect consumer PII.

78.     Additionally, Experian's special relationship with Plaintiff and the members of the Class imparted upon Experian a duty to use reasonable security measures in handling, collecting, and storing Plaintiff's and the Class members' PII.  The special relationship arose because the PII of Plaintiff and the Class members was entrusted to Experian and only Experian was in a position to ensure that its computer systems were sufficiently protected to prevent the unauthorized access and theft of the PII of Plaintiff and the Class members.

79.     Experian's duty included, among other things, designing, maintaining, and testing its security systems to ensure that Plaintiff's and the Class members' PII in its possession and/or control was adequately secured and protected.

18

80. Experian further had a duty to implement processes that would detect a breach of its security systems in a timely manner.

81. Experian breached its duty to Plaintiff and the Class members by failing to adopt, implement, and maintain adequate security measures to safeguard the PII of Plaintiff and the Class, by failing to adequately monitor its network security, by allowing unauthorized access to the PII of Plaintiff and the Class, and by failing to recognize in a timely manner that the PII of Plaintiff and the Class was accessed and stolen.

82. But for Experian's misconduct and breach of its duty, the Data Breach would not have occurred and the PII of Plaintiff and the Class would not have been accessed and stolen by hackers.

83. Experian knew that its security systems were vulnerable as evidenced by its long and extensive history involving numerous breaches of its computer systems, but choose to disregard these vulnerabilities and failed to remediate them.

84. Experian's negligent handling of the PII of Plaintiff and the class was the direct and proximate cause of the foreseeable harm suffered by Plaintiff and the members of the Class. Experian had sole control over the data and Plaintiff had no ability to protect his information. Consequently, Experian was in the best and only position to safeguard Plaintiff's PII. Experian failed in this regard and negligently allowed third party hackers to access its servers and steal Plaintiff's PII. Thus, Experian's negligence directly made available Plaintiff's PII and therefore was a direct cause of Plaintiff's harm.

85. As a result of Experian's negligence, Plaintiff and the Class have suffered damages and harm identified above and are at a substantial and imminent risk of becoming victims of identity theft, fraud, and abuse.

## COUNT IV:  NEGLIGENCE *PER SE*
### (on behalf of the Statewide Connecticut Class)

86.     Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.  Plaintiff brings this claim on behalf of the Statewide Connecticut Class.

87.     Section 5 of the FCT Act, 15 U.S.C. §45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by businesses of failing to use reasonable measures to protect PII.

88.     Experian violated Section 5 of the FTC Act by failing to implement and maintain reasonably adequate security measures and practices to protect the PII of Plaintiff and the Class. Experian's conduct was particularly unreasonable given the large amount of consumer PII it collected and stored and the foreseeability of an attack on, and theft of, such PII.

89.     Experian's violation of Section 5 of the FTC Act constitutes negligence *per se*.

90.     Plaintiff and the members of the Class, as consumers, are within the class of individuals the FTC Act was specifically enacted to protect.

91.     The harm that has occurred is the type of harm the FTC Act was intended to prevent.  To be sure, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the members of the Class.

92.     As a result of Experian's violation, Plaintiff and the Class have suffered damages and harm identified above and are at a substantial and imminent risk of becoming victims of identity theft, fraud, and abuse.

**COUNT V:    VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT,**
**Conn.  Gen.  Stat. §42-110 *et. seq.***
**(on behalf of the Statewide Connecticut Class)**

93.    Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.  Plaintiff brings this claim on behalf of the Statewide Connecticut Class.

94.    Plaintiff and Defendant are "persons" as defined by the CUTPA.  *See* Conn. Gen. Stat. §42-110a(3).

95.    The CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* at §42-110b(a).

96.    In determining whether an act or practice is unfair, courts must consider whether the act or practice offends public policy as it has been established by statutes, the common law, or otherwise, whether the act or practice is immoral, unethical, oppressive, or unscrupulous, and whether it causes substantial injury to consumers.

97.    In interpreting the CUTPA and deciding whether acts or practices are unfair and prohibited, courts are guided by the interpretations given by the FTC and the federal courts to Section 5(a)(1) of the FTC Act.  *See id.* at §42-110b(b).

98.    As described above, Defendant failed to properly implement adequate data security measures which could have prevented the Data Breach.   Experian's conduct offends public policy as established by the FTC in its interpretation of the FTC Act.  The FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ adequate or reasonable data security measures, caused the same harm suffered by Plaintiff and the members of the Class.  As such, Experian's conduct as alleged above is in stark opposition to the FTC's interpretation of the FTC Act.  Accordingly, it violates public policy within the meaning of the CUTPA.

21

99.     Experian's conduct also is immoral, unethical, oppressive, and unscrupulous. Experian knew that it had been the target of breaches many times in the past and that its security systems were woefully inadequate.  Despite this knowledge and despite the success of the numerous past breaches, Experian did not change its course of conduct.  Instead, Experian sat idly by and simply allowed hackers to steal the information of Plaintiff and the Class at their leisure.  This conduct is inexcusable and accordingly in violation of the UTPA.

100.    Finally, Experian's conduct caused and will continue to cause substantial injury to consumers, including Plaintiff and the Class.  Indeed, the FTC has recognized that the theft and misappropriation of consumer PII is detrimental to consumers and causes substantial injury. This conclusion is supported in fact because consumers suffer for many years when their PII is stolen and misappropriated.  As a result, Experian has violated the CUTPA.

101.    Experian's violation has directly and proximately caused Plaintiff and the Class to suffer ascertainable losses as detailed above.

102.    As a result, Plaintiff and the members of the Class are entitled to all equitable and monetary relief authorized by the CUTPA.

103.    Plaintiff has provided notice of this action and a copy of this Complaint to the Attorneys General pursuant to Conn.  Gen.  Stat.  §42-110g(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court enter judgment against Defendant and in favor of Plaintiff and the members of the proposed classes and award the following relief:

A.      That this action be certified as a class action pursuant Federal Rule of Civil Procedure 23, declaring Plaintiff as the representative of the proposed classes and Plaintiff's counsel as counsel of the proposed classes;

B.      Monetary damages;

C.      Injunctive relief, including but not limited to the provision of credit monitoring services for Plaintiff and the members of the proposed classes for a period of at least twenty-five (25) years, the provision of bank monitoring services for Plaintiff and the proposed classes for a period of at least 25 years, the provision of credit restoration services for Plaintiff and the proposed classes for a period of at least 25 years; the provision of all costs and expenses associated with freezing, lifting any freeze, and re-initiating any freeze on the credit files of Plaintiff and the members of the proposed classes at all four major credit reporting agencies (Experian, Equifax, TransUnion, and Innovis) for at least 25 years, and the provision of identity theft insurance for Plaintiff and the proposed class for a period of at least 25 years;

D.      Reasonable attorneys' fees and expenses, including those related to experts and consultants;

E.      Costs;

F.      Pre- and post-judgment interest; and

G.      The provision of whatever other relief the Court deems just, equitable, and appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P 38(b), Plaintiff, individually and on behalf of the Class he seeks to represent, hereby demands a trial by jury on all causes of action asserted in this action so triable.

Dated:  November 6, 2015              **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

   s/ Joseph P.  Guglielmo
Joseph P.  Guglielmo (CT 27481)
Erin Green Comite (CT 24886)
156 South Main Street

P.O.  Box 192
Colchester, CT  06415
Tel.:  860-537-5537
Fax:  860-537-4432
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Gary F.  Lynch
Jamisen Etzel
Kevin Abramowicz
**CARLSON LYNCH SWEET & KILPELA LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
Tel: 412 322-9243
Fax; 412 231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com
kabramowicz@carlsonlynch.com

*Counsel for Plaintiff*